**In re William Bryan CASS and Ethelyn Jacobs Cass, d/b/a Circle Lazy C Ranch, Debtors.**

**Bankruptcy No. 84–00025–W.**

United States Bankruptcy Court, N.D. Oklahoma.

July 28, 1989.

Randolph P. Stainer, Stainer & Stainer, Tulsa, Okl., for debtor.

Ralph Grabel, Tulsa, Okl., Trustee.

Logan, Lowry, Johnston, et al., Vinita, Okl., for Vinita Bank.

Rorschach, Pitcher, et al., Vinita, Okl., for Welch Bank.

ORDER GRANTING IN PART OBJECTION TO EXEMPTIONS AND MOTION TO AVOID LIENS AND GRANTING MOTION TO ABANDON

MICKEY DAN WILSON, Bankruptcy Judge.

At hearing on motion to avoid lien under 11 U.S.C. § 522(f)(2) and objection thereto, the Court consolidated therewith for trial a related motion for abandonment under 11 U.S.C. § 554(b) and objection thereto and objection to claim of exemption under 11 U.S.C. § 522(b), (l). After hearing, the consolidated matters were taken under advisement. Upon consideration of evidence introduced and received, and of the record herein, the Court, pursuant to Bankruptcy Rules 7052 and 9014, finds, concludes, and orders as follows.

## FINDINGS OF FACT

On January 9, 1984, William Bryan Cass and Ethelyn Jacobs Cass ("Mr. Cass;" "Mrs. Cass;" "Debtor(s)") filed their voluntary petition for relief under 11 U.S.C. Chapter 7 in this Court. With their petition, Debtors filed their Schedule B-4 claiming certain property as exempt from their bankruptcy estate pursuant to 11 U.S.C. § 522(b), (l) and Bankruptcy Rules 1007, 4004(a).

Thereafter, the First National Bank and Trust Company of Vinita, Oklahoma ("Bank of Vinita") filed its "Motion to Abandon Property," asserting a perfected security interest in certain property of Debtors' bankruptcy estate, including property claimed exempt by Debtors, and seeking abandonment thereof pursuant to 11 U.S.C. § 554(b).

Thereafter, Debtors objected to abandonment; and also filed their "Motion to Avoid Lien" pursuant to 11 U.S.C. § 522(f)(2) on certain property claimed exempt but subject to Bank of Vinita's security interest.

Thereafter, Bank of Vinita objected to Debtors' claims of exemption and to Debtors' motion to avoid liens.

Welch State Bank filed its "Response to Motion to Abandon Property," asserting a lien prior to that of Bank of Vinita but otherwise agreeing to abandonment.

At hearing, the Court consolidated for trial the abandonment, exemption and lien avoidance matters. After trial, debtors filed their "Amendment to Motion to Avoid Lien," removing some items of collateral from the original list of items as to which Bank of Vinita's lien was to be avoided.

The items of property whose abandonment is disputed are as follows:

East Half of the Northeast Quarter of Section 25, Township 28 North, Range 20 East, Craig County, Oklahoma, containing 80 acres, more or less;

West Half of the Northwest Quarter of Section 21, Township 29 North, Range 20 East, Craig County, Oklahoma, containing 80 acres, more or less;

1976 Ford ¾ ton pickup, VIN F25MKC32078;

1972 Ford 2 ton truck, VIN F60CCP05343;

John Deere 15-foot brushhog;

1965 Diesel John Deere 2010 tractor;

1955 Diesel Case 500 tractor;

1956 Farmall Super C tractor;

IHC 2-16 plow;

IHC 8 foot disc;

Harrow;

John Deere manure spreader;

Bob Cat loader;

Horse walker;

Blair gooseneck trailer;

Hunter gooseneck trailer;

55 panels of 15½ × 15½ steel;

1980 WW Loadmaster flatbed trailer;

Big bale carrier;

John Deere front end loader.

The items of property whose exemption is disputed include all of the above *except* the real property and include also the following:

Two horses (Colida Will and Colida J.R.) for Debtor, William Bryan Cass;

Two horses (Colida's Vandy and Colida Flyin' Star) for Debtor, Ethelyn Jacobs Cass;

Provisions/forage on hand or growing for use of exempt stock for one year;

1978 Ford ¾ ton pickup;

1977 LTD automobile;

2 saddles valued at $300;

1971 San Juan house trailer.

The items of property as to which lien avoidance is disputed include all of the above *except* the real property, trucks, automobile, big bale carrier, and John Deere front end loader.

Mr. Cass has been breeding, raising and showing horses since at least 1953, Statement of Affairs No. 1. He testified that he has been involved with horses for the last 40 years. He has worked for B.F. Goodrich Co. since approximately 1957. His gross income from B.F. Goodrich in the five years preceding the filing of his petition in bankruptcy was, in 1979, $16,726.20; in 1980, $16,656.42; in 1981, $18,009.57; in 1982, $21,703.00; in 1983, $28,091.62, trial exhibits VB1–VB5. His receipts from stud and boarding fees and horse sales are not perfectly clear but, assuming that his tax returns Form 1040–F and Form 4797 are to be combined, were roughly, in 1979, $41,-189.56; in 1980, $35,673.50; in 1981, $31,-741.99; in 1982, $24,460.50; in 1983, $9,091.00, trial exhibits VB1–VB5. Some other income was occasionally received from coal royalties and other sources. Nevertheless, Debtors' farming operations incurred reported losses of ($66,847.74) in 1979, ($69,040.38) in 1980, ($88,607.42) in 1981, ($140,063.08) in 1982, ($46,813.50) in 1983; and Debtors reported a negative adjusted gross income of ($25,029.60) in 1979, ($59,874.56) in 1980, ($120,333.41) in 1981, ($166,658.57) in 1982, and ($178,618.55) in 1983, trial exhibits VB1–VB5.

Debtors own 280 acres in Craig County in two lots, valued at approximately $350,-000.00, and claimed one 80–acre tract and 80 acres of the remaining 200–acre tract as exempt. This land, or some portion thereof, is subject to a mortgage in favor of Farmers' Home Administration securing a debt of $38,000.00; a mortgage in favor of Federal Land Bank Association securing a debt of $51,440.00; a second mortgage in favor of Welch State Bank securing a debt of $6,400.00; and a third mortgage in favor of Bank of Vinita securing a debt of $550,-000.00 to $554,000.00. Debtors have been borrowing money from Bank of Vinita since 1962.

Although Mr. Cass is an expert in the rearing and management of horses, Mrs. Cass has no comparable expertise.

Mr. Cass conducts his horse-ranching activities under the name of the "Circle Lazy C Ranch," dealing in quarter-horses and appaloosas. He has produced at least one Grand National Champion and earned as much as $30,000.00 per horse. His prize animal was named Colida and is buried in his front yard.

Mr. Cass claims exemption of two horses, named Colida Will and Colida J.R., valued at $1,000.00 together. Mrs. Cass claims exemption of two horses, named Colida's Vandy and Colida Flyin' Star, valued at $1,000.00 together. All of these animals are descendants of Colida. All of these animals are stallions, themselves capable of siring other horses; their services in this regard are advertised by debtors and are hired out by debtors for pay. Colida Will is trained for riding; Colida J.R. is never ridden; Colida's Vandy is being trained for riding; Colida Flyin' Star was ridden the week before the hearing.

Mr. Cass claims exemption of his interest to the extent of $1,500 in a 1978 Ford ¾ ton pickup truck. The truck is valued at $4,100 on debtors' Schedule B–2(f). It is one of several items, whose total value is $125,-000, which are collateral for a debt owed to Bank of Vinita of $550,000, debtors' Schedule A–2. Mrs. Cass claims exemption of her interest to the extent of $1,500 in a

1977 LTD automobile. The car is valued at $2,500 on Debtors' Schedule B–2(f) and A–2. It is collateral for a debt owed to Goodrich Credit Union of $2,574.00, Debtor's Schedule A–2.

The items claimed exempt as "implements of husbandry" and/or "tools of trade" have an aggregate value of approximately $20,000, Debtors' Schedule B–4. All of this equipment is used in the course of Debtors' horse raising activities, i.e. to maintain pastureland, haul hay, haul or exercise horses, etc. The only exception is one 1956 Farmall Super C Tractor, which is used with an IHC 2–16 plow to work a garden which occupies an area called the "arena." This is apparently used for other purposes during part of the year.

## CONCLUSIONS OF LAW

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), (M), (O), 11 U.S.C. §§ 522(b), (f)(2), (*l*), 554(b).

The Court will consider, first, debtors' exemptions; second, avoidance of liens on property allowed exempt; and third, abandonment of property not allowed as exempt and still subject to lien.

Debtors commenced their Chapter 7 bankruptcy case on January 9, 1984, and may exempt from their bankruptcy estate property that would have been exempt from creditor execution under Oklahoma exemption laws applicable on that date, 11 U.S.C. § 522(b)(2)(A), 31 O.S.1981 § 1(B).

■ Each Debtor claims as exempt "Two horses … and two saddles, that are held primarily for the personal, family or household use of such [Debtor] …" pursuant to 31 O.S.1981 § 1(A)(11). Bank of Vinita objects.

Mr. Cass claims as exempt two horses named Colida Will and Colida J.R.; Mrs. Cass claims as exempt two horses named Colida's Vandy and Colida Flyin' Star. Debtors have been in the business of horse-breeding since 1953. Their so-called homestead is the site of the Circle Lazy C Ranch, a stud farm. All of the horses claimed exempt are descendants of a prize stud named Colida. All of the horses claimed exempt are themselves studs whose services are sold by debtors. One of the horses claimed exempt, Colida J.R., is never ridden; this horse cannot possibly be "held primarily for … personal, family or household use," and cannot possibly be exempt. The other horses have been or are being trained for riding; yet their main value to debtors is obviously as profitable stud animals, used only incidentally as pets or riding-animals. None of these horses, therefore, are "held *primarily* for … personal, family or household use" (emphasis added) and therefore none are exempt. For a similar ruling as to paintings instead of horses, see *In re Reid: First Bank of Catoosa v. Reid,* 757 F.2d 230 (10th Cir. 1985).

■ Debtors also claim exemption of two saddles, valued at "$300.00"—whether valued singly or together is not clear. One might expect the saddles to follow the horses, which in this case would mean these saddles are not exempt. However, the saddles have nothing to do with Debtors' breeding operations; if the saddles are used mainly for pleasure-riding, they may be "held primarily for … personal, family or household use" even if the horses themselves are not. There being no evidence to the contrary, Bankruptcy Rule 4003(c), these saddles are allowed as exempt.

Debtors claim exemption of "All provisions and forage on hand, or growing for home consumption, and for the use of exempt stock for one (1) year," 31 O.S.1981 § 1(A)(16). Bank of Vinita objects.

From documents filed herein and statements at hearing, it appears that Debtors intended to exempt "… forage … for the use of exempt stock …" There being no exempt stock, there can be no exempt forage for exempt stock.

■ Each Debtor claims exemption of "Such [debtor's] interest, not to exceed One Thousand Five Hundred Dollars ($1,500.00) in value in one motor vehicle," 31 O.S.1981 § 1(A)(12). Bank of Vinita objects.

The "interest" which may be exempt is Debtors' equity interest, if any; *In re Varnell: Wilson v. Tulsa Bell Federal Credit*

*Union,* Case No. 80–01184, Adv. No. 80–0387, unpublished opinion (B.C., N.D.Okla., May 1, 1981) citing *In re McCoy: Wilson v. General Motors Acceptance Corp.,* 643 F.2d 684 (10th Circ.1981) and *In re Cummings,* 413 F.2d 1281 (10th Cir.1969). Mr. Cass claims exemption in a 1978 Ford ¾ ton pickup, which is one of several items of collateral totaling $125,000 in value securing a debt to Bank of Vinita of $550,000; there is no equity in this vehicle which can be exempt. Mrs. Cass claims exemption in a 1977 LTD automobile, valued at $2,500 and securing a debt to Goodrich Credit Union of $2,574.05; there is no equity in this vehicle which can be exempt.

■ Debtors claim exemption of three tractors, three trailers, and miscellaneous equipment as "... implements of husbandry used upon the homestead," 31 O.S.1981 § 1(A)(5). Bank of Vinita objects.

Debtors exempted without objection some 160 acres of land as their rural homestead under 31 O.S.1981 §§ 1(A)(1), 2. Under Oklahoma law, land outside any city, town or village may be exempt as homestead up to a maximum of 160 acres; but such land is exempt, even if less than 160 acres, only to the extent that it is impressed with a homestead character, i.e., is devoted to rural domestic use and forms a necessary or appropriate part of the rural home's curtilage, *In re Shields,* 85 B.R. 582 (B.C.N.D.Okla.1988). There is evidence that Debtors' 160 acres is largely given over to use as a commercial stud farm; and in any event, 160 acres is *prima facie* excessive as true curtilage. Debtors' "homestead" exemption might well have been objected to, yet no objection was made, and the entire 160 acres is now exempt by operation of law, 11 U.S.C. § 522(*l*), Bankruptcy Rule 4003(b). The Oklahoma statute exempts *"All* implements of husbandry *used upon the homestead"* (emphasis added). "Although the statutory language seems unqualified and absolute, it should be given a reasonable construction and application ... and Oklahoma case law has construed and applied exemptions in a reasonably limited manner ... [T]he rural homestead itself is limited

to only such land (up to a maximum of 160 acres) as constitutes the rural home's curtilage ... the value, size, complexity, and business use of implements are factors bearing on their exemptibility ... and ... accordingly, only those implements of husbandry should be exempt which are reasonably necessary and appropriate for use upon the curtilage" (citations omitted), *In re Helmuth,* 92 B.R. 494, 498–499 (B.C.N.D.Okla.1988). In the present case, this Court will allow as exempt only such "implements of husbandry" as are appropriate for domestic use upon Debtors' curtilage, notwithstanding the exaggerated size of Debtors' total "homestead" exemption—this Court will not compound one error with another. The evidence indicates that all of the tractors, trailers and equipment claimed exempt as "implements of husbandry" is appropriate for use on Debtors' stud farm; and none of it is appropriate for domestic use on Debtors' true curtilage whatever the exact extent of said curtilage may be. The only exception is the 1956 Farmall Super C Tractor with its IHC 2–16 plow; yet these items may be used only partly or incidentally in gardening, and what the garden produce is used for (i.e., sale or domestic consumption or both) does not clearly appear. Items which are used only incidentally for domestic use may not be exempt, *Nelson v. Fightmaster,* 4 Okl. 38, 44 P. 213 (1896). But the burden is on Bank of Vinita to show that the tractor and plow are not appropriate for domestic use; and that burden has not been met. Accordingly, the 1956 Farmall Super C Tractor and IHC 2–16 plow should be allowed as exempt as "implements of husbandry used upon the homestead." The rest of Debtors' tractors, trailers, equipment, etc. cannot be exempt under this category.

■ Debtors claim the same tractors, trailers and miscellaneous equipment exempt as "... tools, apparatus, ... used in any trade or profession of [Debtors] ..." 31 O.S.1981 § 1(A)(6). Bank of Vinita objects.

"Although the statutory language seems unqualified and absolute, it should be given a reasonable construction and application

... and Oklahoma case law has construed and applied exemptions in a reasonably limited manner ... Regarding 'all tools, apparatus ... used in any trade or profession,' it appears that exemption was intended to reach inexpensive items, hand-held or reasonably limited in bulk, complexity and artificial power, used by artisans, professional persons in the strict sense, or other skilled or semi-skilled workers in the personal exercise of their special aptitudes ..." (citations omitted), *In re Helmuth,* supra at 498–499. Whether horsebreeding or any other form of agriculture is a "trade or profession" for purposes of this exemption is an open question. No reported Oklahoma Supreme Court case has ever entertained a farmer's claim to be a "tradesman" or "professional". The question of what is a "trade" was discussed at some length in *Edgin v. Bell–Wayland Co.,* 149 P. 1145 (Okla.1915); this case was overruled "insofar as it conflicts with" *Hoyt v. Pullman,* 51 Okl. 717, 721, 152 P. 386 (Okla.1915); but the extent to which these opinions conflict is not clear. It seems likely that *Hoyt* adopted *Edgin's* principles and merely modified *Edgin's* practice. If so, these cases indicate that a "trade" for exemption purposes does not include the activities of a mere vendor. The available evidence as to Debtors' activities in conducting their horse-breeding operation is insufficient to enable the Court to apply these principles to Debtors herein. The benefit of doubt must be given to Debtors, Bankruptcy Rule 4003(c); but in any event the value of property allowed exempt as "tools of trade" cannot exceed $5,000, *In re Helmuth,* supra, 92 B.R. pp. 500–501. However, even if horse-breeding is a "trade" in the abstract, there is serious question whether it is a "trade" as to these Debtors—that is, whether it is the source of these Debtors' livelihood. Mr. Cass has worked for B.F. Goodrich almost as long as he has maintained the Circle Lazy C Ranch; his salaried employment, considered alone, makes him a profit, in stark contrast with the huge and continuing losses incurred by his stud farm. As a rule, claims of exemption of "tools of a trade" should be limited to a debtor's single principal business, 31 AM.JUR.2D (2d ed. 1967) "Exemptions" §§ 12, 57. Profitability alone is not determinative of which one of several activities is a debtor's principal occupation, 31 AM. JUR.2D, supra, § 57. On the other hand, it may be simply unrealistic to treat a regularly unprofitable activity as a "trade," especially when a more profitable activity is carried on alongside it. An analogous problem under the Internal Revenue Code involves the determination of what is "an activity not engaged in for profit;" see 26 U.S.C. § 183(d), Treas.Reg. § 1.183–1(a), (c)(1)–(3), (d), § 1.183–2(a)–(c). Although this Court is not bound by tax code provisions or regulations in this exemption context, the Court feels that the example provided by these tax laws is instructive here. It seems unrealistic to treat Debtors' stud farm as their "trade" or source of livelihood; although once profitable, it has long since ceased to be so, and is now an activity which Mr. Cass carries on, regardless of its unprofitability, because he likes to do it. It could be called a hobby—and a ruinous one at that. Exemptions are intended for debtors' support, not to facilitate their ruination. Under such circumstances, allowance of any exemptions of "tools" for continuation of a ruinous hobby would pervert the intended operation of Oklahoma exemption laws. Such perversion this Court should prevent, 12 O.S.1981 § 2, 25 O.S.1981 § 29, *In re Captain's Estate,* 191 Okl. 463, 130 P.2d 1002 (1942), *Nelson v. Fightmaster,* supra at 44, citing *In re Baldwin,* 71 Cal. 74, 12 P. 44 (1886). Yet this is a borderline case, see e.g. Treas.Reg. § 1.183–2(c)(4); and in such a case this Court hesitates to rule against Debtors. Exemption of $5,000 worth of "tools of trade" will therefore be allowed, for the reason that Bank of Vinita has not met its burden of proof and has not satisfactorily shown that this property should not be exempt.

Debtors claim exemption of a 1971 San Juan house trailer as "a manufactured home, provided that such manufactured home is the principal residence of [Debtors]," 31 O.S.1981 § 1(A)(2). Bank of Vinita objects.

A small house sits some two dozen yards from debtors' house trailer. Until recently, the house trailer could not have been Debtors' principal residence, for the reason that it was someone else's residence: in that trailer lived an employee of Mr. Cass, retained on salary for two years to help him work his farm. But that individual quit Mr. Cass on January 1, 1984, just before Debtors filed their petition in bankruptcy. The Court is not convinced that the house is or will remain Debtors' principal residence to the exclusion of the trailer. Since Debtors receive the benefit of doubt, Bankruptcy Rule 4003(c), Debtors' house trailer must be allowed as exempt.

11 U.S.C. § 522(f) provides in pertinent part that:

"... debtor may avoid the fixing of a lien on an interest of the debtor[s] in property to the extent that such lien impairs an exemption to which the debtor[s] would have been entitled under subsection (b) of this section, if such lien is—

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor[s] or a dependent of the debtor[s],

(B) implements, professional books, or tools, of the trade of the debtor[s] or the trade of a dependent of the debtor[s];"

.    .    .    .    .    .

Debtors seek to avoid liens on the four horses claimed as exempt. Since these animals have not been allowed as exempt, liens on them cannot be avoided.

Debtors seek to avoid lien on forage claimed exempt. Since the forage has not been allowed as exempt, the lien on it cannot be avoided.

■ Debtors seek to avoid lien on the two saddles claimed as exempt. Although the saddles have been allowed as exempt, they are not a type of exempt property subject to lien avoidance under 11 U.S.C.

§ 522(f)(2). Although held primarily for personal use, they are not "(A) household furnishings, household goods, wearing apparel, appliances"—or if they are, then so is a spare tire. Since they are held primarily for personal use, they cannot be "(B) implements ... or tools of the trade ..." Therefore, liens on them cannot be avoided.

■ Debtors seek to avoid liens on implements of husbandry claimed as exempt. Even though exempt, the Farmall tractor and its plow are not within the specific categories of exempt property dealt with under 11 U.S.C. § 522(f)(2). They are "implements," but not "implements ... *of the trade*" of Debtors (emphasis added), since they are held for domestic use and are only exempt to that extent. They are held for domestic use, but they are not "household goods" or "appliances" within the common, reasonable meanings of those terms. Therefore, lien avoidance on the Farmall tractor and its plow cannot be allowed.

■ Debtors seek to avoid liens on tools of trade claimed as exempt. This category does fit within 11 U.S.C. § 522(f)(2). However, lien avoidance is permitted only if the lien is not a purchase-money security interest. Evidence showed that Debtors have been borrowing money from Bank of Vinita since 1962, and since that time have borrowed a total of some $554,000.00. The burden of proof as to lien avoidance is on Debtors. Debtors have shown the money borrowed was for the general operation of the stud farm and not for any purchase of a particular item. Debtors have met their burden of proof that their tools are not subject to purchase-money security interests. Therefore, the Bank of Vinita's liens are avoided as to these items to the extent of the $5,000.00 exemption.

Since the saddles, house trailer and some "implements" and "tools" are exempted from the estate, abandonment thereof from the estate becomes moot. The Trustee has not objected to abandonment; and debtors apparently objected to abandonment only pending determination of their motion to avoid liens. Therefore, abandonment of the horses, forage, and nonexempt equip-

ment subject to Bank of Vinita's lien should be granted.

Accordingly, exemption of the two saddles, the 1956 Farmall Super C Tractor and IHC 2–16 plow, and of $5,000.00 worth of other tractors, trailers and equipment is granted, and to this extent Bank of Vinita's objections to Debtors' claims of exemptions are denied. Debtors shall elect in writing within twenty (20) days of the date of entry of this order the items which they desire to exempt in an amount not to exceed $5,000.00. Otherwise, Bank of Vinita's objections to Debtors' claims of exemption are granted. Debtors' motion to avoid lien is granted as to the $5,000.00 of exempt tools of trade but is otherwise denied. Bank of Vinita's motion for abandonment is granted insofar as it is not rendered moot by exemption.

AND IT IS SO ORDERED.