**In re James Ray WIFORD and Katherine Sue Wiford, husband and wife, d/b/a J–K Livestock, Debtors.**

**Bankruptcy No. 84–00491–W.**

United States Bankruptcy Court, N.D. Oklahoma.

Sept. 26, 1989.

Kenneth L. Stainer, Tulsa, Okl., for debtors.

Nancy Nesbitt Blevins, Tulsa, Okl., for U.S.A, FmHa.

Herrold, Herrold, Craige & Horgan, Inc., Tulsa, Okl., for Union Bank.

## ORDER GRANTING IN PART OBJECTION TO EXEMPTIONS AND MOTION TO AVOID LIENS

MICKEY DAN WILSON, Bankruptcy Judge.

At hearing on motion to avoid lien under 11 U.S.C. § 522(f) and objection thereto, objection to claim of exemption, and objection to proposed sale of property of the estate, evidence was introduced and received, and thereafter the matters were taken under advisement. Upon consideration thereof, and of the record herein, the Court, pursuant to Bankruptcy Rules 7052 and 9014, finds, concludes, and orders as follows.

### FINDINGS OF FACT

On March 30, 1984, James Ray Wiford and Katherine Sue Wiford ("Mr. Wiford;" "Mrs. Wiford;" "Debtors") filed their voluntary petition for relief under 11 U.S.C. Chapter 7 in this Court.

With their petition, Debtors filed their Schedule B-2 and supplement thereto, listing assets owned by the Debtors at time of bankruptcy. These included "199 hogs," Schedule B-2(h); and also included "f ... vehicles ... i. Farming supplies and implements ... k. Machinery, fixtures, equipment, and supplies ... used in business ... [and] l. Inventory ...," listed in detail. With their petition, Debtors also filed their Schedule B-4 claiming property as exempt from their bankruptcy estate pursuant to 11 U.S.C. § 522(b), (l) and Bankruptcy Rules 1007, 4004(a). Debtors' Schedule B-4 appeared in pertinent part as follows:

| Type of property | Specify statute creating the exemption | Value claimed exempt |
|---|---|---|
| The East Half of the Northeast Quarter of Section 19, Township 28, Range 24, Ottawa County, Oklahoma, 80 acres Homestead | 31 O.S. § 1A1 | $260,000.00 |

| Type of property | Specify statute creating the exemption | Value claimed exempt |
|---|---|---|
| 1983 Ford 350 | 31 O.S. § 1 A 12 his | $1,500.00 |
| 1983 Ford 350 | 31 O.S. § 1 A 12 hers | 1,500.00 |
| 10 hogs | 31 O.S. § 1 A 14 his | 850.00 |
| 10 hogs | 31 O.S. § 1 A 14 hers | 850.00 |
| Hand tools | 31 O.S. § 1 A 6 | 400.00 |
| Farm Supplies, implements, equipment | 31 O.S. § 1 A 5 | |
| inventory, too[l]s and apparatus | 31 O.S. § 1 A 6 | 67,530.00 |
| provisions and forage on hand for use of | 31 O.S. § 1 A 16 | 930.00 |
| exempt stock for one year | | |

Debtors' Schedules B–4 did not itemize the "hand tools, farming supplies, implements, equipment, inventory, tools and apparatus" claimed exempt, did not make any reference to Debtors' Schedules B–2, and did not specify which items were claimed exempt under authority of 31 O.S. § 1(A)(5) as opposed to (6). The total values of property claimed exempt given on Debtors' Schedule B–4 do not clearly correspond with the values appearing on Debtors' Schedule B–2 and supplement, although they might possibly be reconciled in detail.

With their petition, Debtors also filed their Schedule A–2 listing creditors claiming security interests in Debtors' assets; and reporting a first mortgage on Debtors' homestead in favor of Federal Land Bank; a first mortgage on Debtors' non-homestead realty in favor of one Luke Shelton; a second mortgage on Debtors' land, and a mortgage on unspecified "equipment," in favor of Farmers' Home Administration ("FmHA"), in consideration of an "Operating Loan;" and mortgages on "Livestock and equipment" in favor of First National Bank of Bartlesville, Oklahoma ("1st National Bank") and Miami National Bank, Miami, Oklahoma ("Miami Bank"). According to Debtors, they "made payments to [Miami Bank] and [Miami Bank] made payments to 1st National Bank ...," Schedule A–2. Hereinafter, no distinction is made between Miami Bank and 1st National Bank.

On July 6, 1984, Miami Bank filed its "Application for Order to Abandon" and "Notice and Request for Order to Abandon" regarding at least some of the property listed by Debtors on Schedule B–2—Miami Bank's reference to "Tools & misc. equipment" being no improvement on Debtors' vague claim of exemption. On July 11, 1984, Debtors filed their "Objection to Application for Order to Abandon" and requested a hearing, but stated no reason whatever for their objection. The objection was never set for hearing.

On July 11, 1984, Debtors filed their "Motion to Avoid Lien" pursuant to 11 U.S.C. § 522(f)(2) on property claimed exempt but subject to Miami Bank's security interest; and a similar motion with respect to property subject to security interest of FmHA. In each motion Debtors described themselves as "being farmers, ranchers and breeders of hogs." Each motion included an itemized list of property as to which lien avoidance was sought. On August 9, 1984, Miami Bank filed its "Answer to Motion to Avoid Lien" and its "Objection to Property Claimed as Exempt." On August 20, 1984, FmHA filed its "Response ... to Motion to Avoid Lien." These matters were heard on November 20, 1984.

James R. Adelman ("Adelman") was appointed Trustee of Debtors' estate in bankruptcy. On August 29, 1984, Adelman issued an unfiled "Notice to Parties-in-Interest of Proposed Sale Free of Liens and Encumbrances," wherein he announced his intent to sell a "24 × 7 Gooseneck flatbed trailer." On September 11, 1984, Debtors filed their "Objection ... to Sale by Trustee," asserting "that debtors asked for this item to be exempt under Title 31 O.S.A. Section 1A 5 and or 6." Debtors' Schedule B–2(f) lists two different Gooseneck trailers; but no such trailer is listed on Debtors' Schedule B–2(i), (k) or (l) or on Debtors' Schedule B–4, or in either of Debtors' motions to avoid lien. This matter was also heard on November 20, 1984.

At hearing on November 20, 1984, Mr. Wiford testified that he had been engaged

in farming since boyhood; that Mrs. Wiford had been his wife for 22 years; that their farming activities recently included raising cattle and swine, baling hay for sale and as fodder for their own animals, and growing alfalfa for sale and as fodder for their own animals; that their farming operations were conducted on 240 acres of land owned by them, but in addition Mr. Wiford used his equipment for "custom" baling jobs; that they had employed others to feed their swine, but not since 1983; that the Gooseneck trailer(s) were used, among other things, to move other items of equipment from place to place; that all of the equipment claimed exempt was necessary to conduct their farming operations, and that all of it was necessary to farm the 80 acres they claimed exempt as homestead; and that none of the equipment (with exceptions no longer relevant) was purchased with money borrowed from FmHA or Miami Bank.

On November 20, 1984, Debtors filed their "Amended Motion to Avoid Lien," which specified the authority for exemption of each specific item of property, and in particular distinguished between 31 O.S. § 1(A)(5) and (6). On November 30, 1984, Miami Bank filed its "Post–Hearing Brief in Opposition to Motion to Avoid Lien."

On July 31, 1985, Miami Bank and FmHA filed their "Joint Motion ... for Relief From Automatic Stay," asserting among other things that "On May 16, 1983, [Miami Bank] executed a subordination agreement by virtue of which it subordinated in favor of [FmHA] any lien or security interest it then had or would after acquire on or in ... crops ... livestock and farm equipment purchased or refinanced by debtors with [FmHA] loans [or] ... to secure accounts resulting from advances to be made or supplies to be furnished," Joint Motion p. 3 ¶ 6. On August 12, 1985, Debtors filed their "Objection ..." thereto. The matter was set for hearing on August 20, 1985, but the case docket does not indicate the occurrence or result of any hearing.

Debtors' claim of exemption of 80 acres of land as homestead was not objected to. However, it appears that this acreage was subject to first mortgage in favor of Federal Land Bank, Schedule A–2, and was at some time after bankruptcy foreclosed upon and sold by Federal Land Bank, together with certain fixtures to which Federal Land Bank's mortgage apparently attached, Status Report p. 2 ¶ 7.

On March 4, 1988, FmHA filed its "Renewed Motion for Relief from Automatic Stay and for Abandonment," asserting that "Debtors abandoned the subject property and left the state in February, 1986 ..." and seeking authority "to take possession of and sell the subject property to realize whatever value it continues to have," Renewed Motion pp. 1 and 2. The Court determined that "the debtors are now not farming and have not farmed for a number of months and further that the debtors' farm real estate has been foreclosed upon," and accordingly granted FmHA permission to seize and sell its collateral, but directed that sale proceeds be escrowed pending determination of the lien avoidance issues, Orders filed March 10, 1988.

On or about May 13, 1988, Adelman resigned as Trustee. On May 27, 1988, Scott P. Kirtley was appointed successor Trustee.

On June 14, 1989, Debtors filed their "Status Report," stating that Debtors moved in October, 1985 to Lincoln, Arkansas where Mr. Wiford "was employed by Tyson Foods as swine field representative"; that in November, 1988, Mr. Wiford "accepted employment with Hudson Farms as swine farm manager and [Debtors] returned to Oklahoma"; and that Debtors now reside in Colcord, Oklahoma, Status Report p. 1 ¶ 1, 2.

Debtors further report that "following bankruptcy, the hogs owned by the Debtors were sold over a period of two ... to three ... months as readied for market ... The twenty ... hogs claimed as exempt by the Wifords were sold with the other swine ... Sale funds were delivered to Trustee, James Adelman," Status Report p. 1 ¶ 3.

Debtors further report that certain listed items "were repossessed by FmHA under purchase money security agreements and sold by them ..." Status Report p. 2 ¶ 5;

that other listed items "were junked as valueless ..." Status Report p. 2 ¶ 6; that other listed items "remained affixed to the real estate and were transferred with the realty at the time of sale by Federal Land Bank ...," Status Report p. 2 ¶ 7; and that one listed item, "pasture mower, 14', (listed as pasture drill within some pleadings)," was "stolen prior to sale and the theft reported to the County Sheriff ...," Status Report p. 2 ¶ 8. The stolen item is valued on Debtors' Schedule B–2 supplement at $1,000; whether this item was insured and the disposition of insurance proceeds, if any, is not reported.

Some of the items listed in Debtors' "Status Report," namely "Stock trailer, Circle H, 7' × 22'" (Status Report ¶ 5B) and "Natural grain storage, Reed, 44 ton ... Grain storage, Reed, 30 ton ... Mill, modern, 5 H.P." (Status Report ¶ 7C., D., E.) seem not to have been listed in Debtors' original Schedules. However, all of these items were subject either to FmHA's purchase money security interest or Federal Land Bank's mortgage and security interest in fixtures, are no longer in Debtors' possession, and apparently are no longer claimed by Debtors as exempt or subject to lien avoidance.

Debtors further report that they "have in their possession" certain listed items, namely a chain saw, lawn mower, Rototiller, and hand tools, Status Report p. 1–2 ¶ 4.

Debtors further report that "The balance of the items listed within Debtors' pleadings were sold following removal from the Debtors' original acreage ... which resulted in the approximately ... $17,000.00 ... of sale proceeds held in escrow," Status Report p. 2 ¶ 9.

"Debtors continue to assert their exemption [and?] avoidance claims as to the entire sale proceeds, ... $2,000 ... derived from hog sales, and that property in Debtors' possession," Status Report p. 3 ¶ 10.

The items of property whose exemption and lien avoidance remain in dispute, including those allegedly junked or stolen but not including those repossessed under FmHA's purchase money security interest or sold with realty pursuant to Federal Land Bank's mortgage and security interest, and the authority under which they are claimed exempt according to Debtors' "Amended Motion to Avoid Lien," are as follows:

| | |
|---|---|
| 10 hogs for Debtor, James Ray Wiford | 31 O.S. Sec. 1 A (14) |
| 10 hogs for Debtor, Katherine Wiford | 31 O.S. Sec. 1 A (14) |
| Provisions and forage on hand or growing for use of exempt stock for one year | 31 O.S. Sec. 1 A (16) |
| 1968 J.D. 3020 | 31 O.S. Sec. 1 A (5 & 6) |
| 1976 International 464 | 31 O.S. Sec. 1 A (5 & 6) |
| 1983 International 560 | 31 O.S. Sec. 1 A (5 & 6) |
| J.D. Plow 4–14 bottoms | 31 O.S. Sec. 1 A (5) |
| J.D. Sickle Mower # 38 | 31 O.S. Sec. 1 A (5) |
| New Holland Swather 490 | 31 O.S. Sec. 1 A (5) |
| New Holland Rake # 258 | 31 O.S. Sec. 1 A (5) |
| New Holland 850B round baler | 31 O.S. Sec. 1 A (5) |
| Parker feed wagon w/auger | 31 O.S. Sec. 1 A (5 & 6) |
| Calamet vacuum tank (1,500 gallon) | 31 O.S. Sec. 1 A (6) |
| J.D. Grain Drill | 31 O.S. Sec. 1 A (5) |
| Imco 6' box blade | 31 O.S. Sec. 1 A (5) |
| 6' blade | 31 O.S. Sec. 1 A (5) |
| 3 point carry all | 31 O.S. Sec. 1 A (5 & 6) |
| 5' Siderider mower | 31 O.S. Sec. 1 A (5) |
| 14' J.D. pasture mower | 31 O.S. Sec. 1 A (5) |
| MFS Grain Auger 56' × 8" | 31 O.S. Sec. 1 A (5 & 6) |
| Wyatt Grain auger 5' × 6" | 31 O.S. Sec. 1 A (6) |
| Forney Welder | 31 O.S. Sec. 1 A (6) |
| Air Compressor | 31 O.S. Sec. 1 A (6) |
| Big bale fork, 3 pt. | 31 O.S. Sec. 1 A (5) |
| Big bale fork, 2 pt. | 31 O.S. Sec. 1 A (5) |

| | |
|---|---|
| Pride of Farms scales | 31 O.S. Sec. 1 A (6) |
| Platform Scales | 31 O.S. Sec. 1 A (6) |
| Chain saw (Sthil) | 31 O.S. Sec. 1 A (6) |
| Riding lawnmower | 31 O.S. Sec. 1 A (5) |
| Lawn mower | 31 O.S. Sec. 1 A (5) |
| Rototiller | 31 O.S. Sec. 1 A (6) |
| Field sprayer | 31 O.S. Sec. 1 A (5 & 6) |
| Fuel tank, 500 gallon | 31 O.S. Sec. 1 A (6) |
| Fuel tank, 120 gallon | 31 O.S. Sec. 1 A (6) |
| Cattle working chute | 31 O.S. Sec. 1 A (6) |
| 500 hog panels (fencing) | 31 O.S. Sec. 1 A (6) |
| 1000 t posts | 31 O.S. Sec. 1 A (6) |
| 48 feeders | 31 O.S. Sec. 1 A (6) |
| 1 cattle feeder | 31 O.S. Sec. 1 A (6) |
| 1 creep feeder | 31 O.S. Sec. 1 A (6) |
| 11 Farro rite houses | 31 O.S. Sec. 1 A (6) |
| 35 A type hay houses | 31 O.S. Sec. 1 A (6) |
| 14 farrow crates | 31 O.S. Sec. 1 A (6) |
| 20 cattle panels | 31 O.S. Sec. 1 A (6) |
| 2 portable confinement units | 31 O.S. Sec. 1 A (6) |
| Livestock medication | 31 O.S. Sec. 1 A (6) |
| hand tools | 31 O.S. Sec. 1 A (6) |

On June 15, 1989, FmHA filed its "Supplemental Report Re: Sale of Property by Farmers Home Administration," and stated therein that sale proceeds had been placed in an interest bearing account; "[t]he balance of this account as of May 31, 1989 was $18,529.93"; and "FmHA's pro rata share of these proceeds is $13,712.15, and [Miami Bank's] pro rata share is $4,817.78 as of that date," Supplemental Report p. 2.

Any "Conclusions of Law" which ought more properly to be "Findings of Fact" are adopted and incorporated herein by reference.

## CONCLUSIONS OF LAW

This a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), (N), (O), 11 U.S.C. §§ 522(b), (f)(2), (*l*), 363(b)(1), (f).

■ Adelman announced his intent to sell a Gooseneck trailer; Debtors objected, stating "that [they] asked for this item to be exempt under Title 31 O.S.A. Section 1A 5 and or 6." In fact, neither of Debtors' two Gooseneck trailers were ever listed on their Schedule B–4, or in their Schedules B–2(i), (k) or (*l*) which might be supposed to correspond to their Schedule B–4; nor did they ever amend their Schedules to include any Gooseneck trailer among property claimed as exempt; nor did they ever list any Gooseneck trailer in any of their motions, or their amended motion, to avoid lien. In short, Debtors never claimed any Gooseneck trailer as exempt. Their objection to sale is entirely unfounded and must be denied.

Debtors move to avoid liens under 11 U.S.C. § 522(f)(2). A prerequisite for lien avoidance under this subsection is that the collateral be exempt property; FmHA and Miami Bank have objected to lien avoidance on grounds that amount to objection to exemption, and in addition Miami Bank has formally objected to Debtors' claim of exemption. Accordingly, this Court will consider, first, Debtors' exemptions; and second, avoidance of liens on property allowed as exempt.

FmHA objects to exemption of "the Reed grain storage, 44 ton, Reed grain storage, 30 ton, Modern Mill 5h, and 1978 N.H. hay bin 490 because these items are fixtures which were annexed to the' real estate," FmHA Response p. 1. The first three items named were transferred with Debtors' realty sold by Federal Land Bank, and their disposition is no longer in issue. The item last named, "1978 N.H. hay bin 490," is not named as such anywhere in Debtors' Schedules or motions. It may be the same item as the "New Holland Swather 490" claimed as exempt under 31 O.S. § 1(A)(5); but if so, it seems not to have gone with

the realty sold by Federal Land Bank, which in turn indicates that it is not a fixture. Accordingly, FmHA's objection to exemption on this ground cannot be sustained.

■ FmHA further "opposes Debtors' Motion *in toto* for the reasons set forth in the Oklahoma Bankers Association Amicus Curiae Brief filed in the case of *Delbert E. Berry and Anna Catherine Berry v. First National Bank and Trust Company of Vinita, and United States of America,* Case No. BK–82–01101, Adversary No. 82–0730 and 82–0731, currently pending before this Court. A copy of such brief is attached as Exhibit 'A' and incorporated herein," FmHA Response p. 3. The brief was not attached; and this line of argument may be considered unbriefed and abandoned. In any event, this Court's decisions in the *Berry* case and adversary proceedings just cited are now pending on appeal, and need not be relitigated here.

■ FmHA further "opposes Debtors' Motion *in toto* for the reason that the items claimed as exempt herein are not specifically claimed as exempt in Schedule B–4 attached to the Debtors' Petition," FmHA Response p. 3. A claim of exemption should be detailed enough to permit parties in interest "to decide which claims to challenge," *Payne v. Wood,* 775 F.2d 202, 206 (7th Cir.1985), cert. den. 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1985). Here, the items claimed as exempt are not itemized on the Schedule B–4; and the relationship between the Schedule B–4 and various subdivisions of Schedule B–2 is not clear. Yet it is apparent that Debtors intended that their claim of exemption on Schedule B–4 refer in some manner to the items listed in detail on Schedule B–2. This Court has already denied exemption of a Gooseneck trailer listed in neither place; but Debtors need not always be required to list the same property twice, once on Schedule B–2 and again on Schedule B–4. The Court does not condone claims of exemption that are vague and difficult to ascertain; but under the circumstances here, disallowance of any exemption whatever would be too harsh a penalty. According-

ly, FmHA's objection to exemption on this ground cannot be sustained.

■ FmHA further objects to exemption of $67,530 worth of property, because of a $5,000 limitation imposed by 31 O.S. § 1(C) on operation of 31 O.S. § 1(A)(5), (6). The $5000 limitation imposed by 31 O.S. § 1(C) became effective on April 3, 1984. Debtors filed bankruptcy on March 30, 1984, and may claim exemptions under Oklahoma law applicable on that date, 11 U.S.C. § 522(b)(2)(A); *In re Pelter,* 64 B.R. 492 (W.D.Okla.1986). Thus, 31 O.S. § 1(C) does not apply to these Debtors. Accordingly, FmHA's objection to exemption on this ground cannot be sustained.

■ Miami Bank objects to exemption because "debtors have waived their exemption rights to the subject property by signing notes and security agreements granting [to Miami Bank] security interests in said property," Miami Bank's Objection p. 4 ¶ IV(A). No authority is cited for this remarkable proposition. It is "entirely elementary" that exemption rights are not effective against foreclosure of consensual liens, *Keist v. Cross,* 118 Okl. 142, 143, 247 P. 85 (1926). However, no law known to this Court calls for waiver of exemption rights for all purposes merely because a security agreement has been signed. The Court's attention is not drawn to any explicit waiver-of-exemption clause in any note or security agreement among these parties; and if any such clause did appear and was effective as among these parties, its effect as to Debtors's bankruptcy estate (whose Trustee was not party to such waiver) is not explained. Waiver is the voluntary relinquishment of a known right, 28 AM.JUR.2D (1966) "Estoppel and Waiver" § 154. No waiver of Debtors' exemption rights appears. Accordingly, Miami Bank's objection on this ground cannot be sustained.

■ Miami Bank further asserts that "debtors have no exemption rights in the subject property because they have no equity in it, the unpaid balance of the indebtedness exceeding the value of the collateral," Miami Bank Objection p. 4 ¶ IV(B).

Of Oklahoma's many categories of exempt property, only one, namely debtor's "interest" in a motor vehicle, refers to debtor's equity interest, *In re McCoy: Wilson v. General Motors Acceptance Corp.*, 643 F.2d 684 (10th Cir.1981). All other Oklahoma exemptions refer to property items themselves, not just debtor's equity interest therein. Accordingly, Miami Bank's objection to exemption on this ground cannot be sustained.

■ Debtors each claim exemption of ten hogs under 31 O.S. § 1(A)(14). The Oklahoma exemption statute at one time provided for exemption of "Ten (10) hogs," without qualification, 31 O.S.A. (1971) § 1(12). Since at least 1981, however, the statute has provided for exemption of "Ten hogs, *that are held primarily for the personal, family or household use* of" the debtor claiming exemption (emphasis added). Debtors herein raised and sold swine as a source of income. They owned 199 hogs at time of bankruptcy, and sold all of them "as readied for market;" they merely claim the proceeds from sale of twenty of these hogs—any twenty—as exempt. There is no evidence that any of Debtors' 199 hogs were held for personal, family or household use. What evidence there is, indicates that all of Debtors' hogs were held for the same purpose, namely as a source of income, and disposed of in the same way, namely sold for income. Under these circumstances, Debtors' claim of exemption of hogs, or their proceeds is improper and must be denied.

■ Debtors also claim exemption of "provisions and forage on hand for use of exempt stock for one year" under 31 O.S. § 1(A)(16). There being no exempt stock, there can be no exempt forage for use of exempt stock, *In re Cass*, 104 B.R. 382 (N.D.Okla.1989); and this claim of exemption must be denied.

Debtors also claim exemption of various items of equipment under 31 O.S. § 1(A)(5) or (6). Some items are claimed exempt under both 31 O.S. § 1(A)(5) and (6).

■ Miami Bank points out that the property thus claimed as exempt "consists largely of machinery and other equipment worth a large sum. [Miami Bank] submits that said property is not the type of property that qualifies for exemptions under which it is listed by the debtors and, in any event, consists of amounts of machinery and other equipment grossly in excess of that needed ..." Miami Bank Objection p. 5 ¶ IV(C). Although the 1984 amendment adding 31 O.S. § 1(C) mentioned above is not directly applicable to bankruptcy cases filed before the effective date of said amendment, this Court has held that said amendment was intended by the Oklahoma Legislature to clarify the intended scope of the pre–1984 exemptions in accordance with prior Oklahoma case law, *In re Helmuth*, 92 B.R. 494 (N.D.Okla.1988). Therefore, Debtors' claim of exemption under either 31 O.S. § 1(A)(5) or (6) must be limited to property worth, at most, $5000; and exemption of property in any value greater than that cannot be allowed. However, Debtors may be entitled to exempt even less than $5000 worth of property, depending on the actual use of and need for the items claimed as exempt.

■ Generally, items are exempt as "implements of husbandry used upon the homestead" under 31 O.S. § 1(A)(5) if they are appropriate for domestic use on Debtors' curtilage; while items are exempt as "tools or apparatus of trade or profession" under 31 O.S. § 1(A)(6) if they are used by workers of a certain sort "on the job." It is incongruous to claim the same property exempt as "implements of husbandry" (which must be for domestic use) and as "tools of trade" (which cannot be for domestic use). Under peculiar circumstances, such claims of exemption might occasionally prove justified; but, notwithstanding Bankruptcy Rule 4003(c), it seems that the burden of explaining away such contradictory claims of exemption should be on these Debtors. Nevertheless, in the present case there is no indication that Debtors or their attorney apprehended the incompatibility of 31 O.S. § 1(A)(5) and (6). For purposes of this decision only, this Court will overlook the legal inconsistency of claiming the same item exempt under either 31 O.S. § 1(A)(5) or (6).

However, Mr. Wiford testified that the all the items claimed exempt were necessary to conduct his farming operations, and that all of them were necessary to farm his homestead. It is improbable that the same equipment needed for a big farm (240 acres) is needed for a small one (80 acres or less). It is especially improbable that the same equipment needed for commercial farming operations on 240 acres is needed for domestic husbandry on the area immediately annexed to Debtors' farmhouse. This presents a evidentiary inconsistency which this Court cannot overlook or excuse.

 Items may be exempt as "implements of husbandry used upon the homestead" only to the extent such items are appropriate for domestic use upon Debtors' curtilage; see *In re Cass,* supra; *In re Helmuth,* supra. There is evidence that Debtors' 240 acres were largely given over to use as a commercial farm. Debtors' "homestead" exemption might well have been objected to, yet no objection was made, and the entire 80 acres was exempted by operation of law, 11 U.S.C. § 522(*l*), Bankruptcy Rule 4003(b). However, the failure to object may have been due to the fact that the property was subject to mortgage, which would override any interest of the bankruptcy estate in the property even if it was not exempt, and against foreclosure of which exemption would be ineffective anyway. This Court will therefore allow as exempt only such "implements" as are appropriate for domestic use on Debtors' true curtilage, notwithstanding the possibly exaggerated size of Debtors' total "homestead" exemption. See *In re Cass,* supra. Here, it is clear that some at least of Debtors' equipment was used in their commercial farming operations and not for domestic use; but it is not clear what equipment might have been reserved for domestic use. Although Mr. Wiford's testimony in this regard is impeached, there is no evidence apart from his testimony. The burden is on Miami Bank to show that these items are not appropriate for domestic use, Bankruptcy Rule 4003(c); and under these circumstances this burden has not been met. Accordingly, $5000 worth of the items listed as disputed in "Findings of Fact" above and claimed exempt under 31 O.S. § 1(A)(5), should be allowed as exempt as "implements of husbandry used upon the homestead"—except for one additional factor, to be discussed below.

 Items may be exempt as "tools or apparatus of trade or profession" if they are inexpensive, hand-held or reasonably limited in bulk, complexity and artificial power, used by artisans, professional persons in a strict sense, or other skilled or semi-skilled workers in the personal exercise of their special aptitudes, *In re Helmuth,* supra, 92 B.R. pp. 498–499. Whether any form of agriculture is a "trade or profession" for purposes of this exemption is an open question, *In re Cass,* supra. The benefit of doubt must be given to Debtors, Bankruptcy Rule 4003(c). Accordingly, $5,000 worth of the items listed as disputed in "Findings of Fact" above, and claimed exempt under 31 O.S. § 1(A)(6), should be allowed as exempt as "tools and apparatus of trade or profession"—except for one additional factor, to be discussed below.

 There is one more factor which must be taken into account. The law by which exemption is determined is that in effect on the date of filing of bankruptcy. But the facts by which exemption is determined must include those bearing on Debtors' anticipated future conduct with regard to items claimed exempt. That is, property is exempt if it is put to certain uses; if it is not to be so used in the future, it should not be exempt, 31 AM.JUR.2D (1989) "Exemptions" § 79. Exemptions of "implements," "tools," etc. are not a complicated species of cash reserve; they are intended to leave Debtors in possession of certain items of property which are used for the support of Debtors and their family. Items may be sold and their cash proceeds exempted, but only if the proceeds will be used in a manner furthering the purpose of the exemption—usually, reinvested in replacement property which itself will be exempt. Here, most of the disputed property has been liquidated. This fact alone does not deprive Debtors of their exemption

rights in the property or its proceeds; for Debtors might have intended to reinvest the proceeds in exempt equipment, and in any event this Court will not penalize Debtors for expedient measures taken while litigation was under advisement. But in this case, Debtors' farm itself was foreclosed on by its mortgagee, Federal Land Bank. Since then, Mr. Wiford has been employed in sales and managerial capacities. His career as an independent farmer terminated with the foreclosure of his farm; and thereafter his farm equipment became redundant to his support—save as items to be sold for money. With regard to "implements of husbandry", it appears that the only items which can be said to be of any further use "upon the homestead" are the items still in Debtors' possession—namely, a chain saw, lawn mower, Rototiller, and hand tools. Accordingly, these items, and these alone, may be exempt as "implements of husbandry used upon the homestead" under 31 O.S. § 1(A)(5). With regard to "tools of trade," none of these items or their proceeds can be said to be of any further use to an individual whose "trade" is not farming. This makes it unnecessary to determine whether farming is a trade, or whether Mr. Wiford's present activities are a trade, for exemption purposes. Accordingly, none of these items may be exempt as "tools or apparatus used in a trade or profession" under 31 O.S. § 1(A)(6).

■ Since the only property allowed as exempt is the chain saw, lawn mower, Rototiller and hand tools exempted as "implements of husbandry," this is the only property as to which Debtors might avoid liens under 11 U.S.C. § 522(f). Even though exempt "implements," these items are not "implements ... *of the trade*" of Debtors, 11 U.S.C. § 522(f)(2), since they are held for domestic use and are only exempt to that extent. A closer question is whether they are "household goods" or "appliances," 11 U.S.C. § 522(f)(2). A lawn mower seems to fit reasonably well within the common meaning of these terms—it is a large "appliance" but not all that different from, e.g., a vacuum cleaner. A chain saw fits less comfortably within these catego-

ries. All things considered, it appears that all of the items in Debtors' possession should be included as "household goods" or "appliances" within 11 U.S.C. § 522(f)(2).

Miami Bank objects to lien avoidance, stating that "Because the debtors are unable to avoid the liens under State law, they are therefore foreclosed from seeking avoidance under the Federal scheme," Miami Bank Answer p. 2 ¶ (D). As stated, this proposition has no merit, indeed is difficult to understand or credit.

Miami Bank further objects to lien avoidance "because the property is not exempt," Miami Bank Answer p. 3 ¶ (E). This ground fails as to property which is exempt, namely the implements, goods or appliances in Debtors' possession.

■ Miami Bank further objects to lien avoidance because "Title 11 U.S.C. § 522(f) was enacted to remedy situations where non-business consumers have granted security interests in property without much value, such as true household items. This section should not be extended beyond the evil it was intended to reach, and thus should not be applied where valuable property was given as security interest for a loan by a debtor in business," Miami Bank Answer p. 3 ¶ (F). Miami Bank accurately states Congressional intent, although the Court of Appeals of this Circuit has not recognized Congressional intent as limiting the operation of § 522(f), *In re Helmuth*, supra; *In re Liming*, 797 F.2d 895 (10th Cir.1986). But the only property allowed exempt by this Court as to which liens might be avoided is not "business" property; and although its value is uncertain, it probably has a resale value approaching zero. This is just the sort of property to which Congress meant § 522(f) to apply. Accordingly, Miami Bank's objection in this regard is not well taken under these circumstances, and cannot be sustained.

Miami Bank further objects to lien avoidance because "The lien avoidance prayed for by the debtors, on property of substantial value, would constitute an unlawful taking by this Court of this creditor's property without due process of law in violation

of the Fifth Amendment of the United States Constitution," Miami Bank Answer p. 3 ¶ (G). This interesting question was apparently not presented to the Court of Appeals of this Circuit in *In re Liming,* supra. In *In re Thompson,* 867 F.2d 416 (7th Cir.1989), the Court of Appeals of the Seventh Circuit upheld the constitutionality of § 522(f) against challenge under the Fifth Amendment "Takings" Clause, because "lien avoidance is not a taking when it is authorized *before* the creditor makes the secured loan in question ... section 522(f), when as here it is applied prospectively, does not violate the takings clause of the Fifth Amendment," citing *U.S. v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). This decision is not persuasive. In *U.S. v. Security Industrial Bank,* supra, debtors sought to avoid liens which had been granted and perfected before enactment of 11 U.S.C. § 522(f). The Court of Appeals of the Tenth Circuit held that § 522(f), so applied, violated the Takings Clause. The Supreme Court agreed that the operation of § 522(f) "would result in a complete destruction of the property right of the secured party" of a sort that might well violate the Takings Clause as construed and applied by the courts, *id.* 459 U.S. pp. 75–78, 103 S.Ct. pp. 410–412. But the Supreme Court held that § 522(f) was not intended (or, at least, should not be read) to apply retrospectively, and affirmed on that ground without deciding the " 'difficult and sensitive questions arising out of the guarantees of the' Takings Clause," *id.* 459 U.S. p. 82, 103 S.Ct. p. 414. The Supreme Court never said that § 522(f) was constitutional if applied prospectively; the Supreme Court said only that § 522(f) did not apply retrospectively at all, which, given the facts before the Court, made it unnecessary to settle the constitutional question. The Seventh Circuit opinion implies that government can seize or destroy any property it wishes, without compensation, provided it gives advance notice thereof—a terrifying doctrine in the context of condemnation proceedings, for example. However, as noted above, the collateral here involved is not of substantial value. Any question of "taking" is therefore academic, even though extremely interesting and important. This Court will not render an academic opinion on so weighty an issue.

For whatever it may be worth, therefore, Debtors' motion to avoid lien as to property allowed as exempt and now in Debtors' possession should be GRANTED.

Exemption of the chain saw, lawn mower, Rototiller, and hand tools now in Debtors' possession is GRANTED, and to this extent FmHA's and Miami Bank's objections to Debtors' claim of exemption is DENIED. Otherwise, FmHA's and Miami Bank's objections to Debtors' claim of exemption are GRANTED. Debtors' motion to avoid lien is GRANTED as to the property allowed as exempt, but is otherwise DENIED.

AND IT IS SO ORDERED.